**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ ) | **Case No. 07-24252-JAD** |
| IN RE: ) | |
| ) | **Chapter 13** |
| **GLENN M. CALABRIA and** ) | |
| **TOMMI M. CALABRIA,** ) | |
| ) | |
| **Debtors.** ) | |
| _____**X** | |
| ) | **Adv. No. 08-02029JAD** |
| **GLENN M. CALABRIA and** ) | |
| **TOMMI M. CALABRIA,** ) | **Doc. #50** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **- vs -** ) | |
| **CIT CONSUMER GROUP; BANK** ) | |
| **OF NEW YORK, and CITI FINANCIAL,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____**X** | |

## MEMORANDUM OPINION

This adversary proceeding includes the Debtors' challenge of the lien position of defendant CIT Consumer Group ("CIT"). On September 9, 2008, this Court denied CIT's motion to dismiss, and thereafter CIT filed a motion for leave to take an interlocutory appeal of this Court's order to the United States District Court for the Western District of Pennsylvania. CIT also filed a Motion for Stay Pending Appeal. It is the Motion for Stay Pending Appeal that is the subject of this Memorandum Opinion. For the reasons set forth below, the Motion for Stay Pending Appeal will be denied.

00003443.WPD

# I.  <u>Jurisdiction</u>

This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(B)(F)(K) and (O), and this Court has proper subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1334(b).

# II.  <u>Background</u>

The Debtors, Glenn and Tommi Calabria, filed this bankruptcy case on July 2, 2007.  The Debtors own an interest in certain real estate, including their residence at 93 Meadowbrook, Eight-Four, Pennsylvania 15330 and a parcel of land located at 85 Meadowbrook, Eighty-Four, Pennsylvania 15330 (collectively, the "Real Property").  Each of the Defendants in this action purportedly assert some sort of lien interest against some or all of the aforementioned Real Property.

After this bankruptcy case was commenced, the Debtors filed this adversary proceeding against the defendants on January 22, 2008.  The complaint filed by the Debtors is not necessarily a model of clarity; but the gravamen of the complaint is that the Debtors' assert that the defendants hold no cognizable lien(s) against the Real Property because the recorded mortgages at issue allegedly "reference the wrong address or contain no legal description." <u>See</u> Complaint at ¶8.

In response to the complaint, Defendant CIT filed a motion to dismiss on February 22, 2008.  In its motion to dismiss, CIT contended that the Debtors' lawsuit against CIT is barred by the doctrine of *res judicata*.  Specifically, CIT alleged that the Debtors had previously obtained a Chapter 7 bankruptcy

discharge here in the United States Bankruptcy Court for the Western District in Case No. 05-25453-MBM. CIT further contends that during the Chapter 7 case CIT filed a secured proof of claim, against which no formal objection was lodged. Consequently, CIT concludes that the administration of the Chapter 7 proceeding without objection to CIT's secured claim operates as a bar to the Debtors' challenge to CIT's secured status.

The Court notes that while CIT's motion to dismiss is premised on certain actions or inactions in the Debtors' Chapter 7 proceedings, CIT did not disclose to this Court in its motion to dismiss exactly what happened in the prior Chapter 7 case. Nonetheless, the Court has taken judicial notice of those proceedings pursuant to Fed.R.Evid. 201.

The prior Chapter 7 case was commenced by the Debtors on April 28, 2005 at Case No. 05-25453-MBM. On September 14, 2005, CIT moved for relief from the automatic stay to pursue its state law remedies. The Debtors defended the motion for relief from stay by asserting, among other things, that CIT's secured status is questionable due to inadequate collateral descriptions in its mortgages. Judge McCullough held an initial hearing on CIT's motion for relief from stay on October 11, 2005; and at the request of the parties, the hearings were continued on numerous occasions to December 13, 2005, January 17, 2006, March 21, 2006, and April 25, 2006, respectively.

Ultimately, the parties were unable to resolve their substantive differences. The end result was that the Chapter 7 Trustee elected to close the Chapter 7

estate without administering any assets for the benefit of creditors. <u>See</u> (Dkt. #76

(Trustee's Report of No Distribution); Case No. 05-25453-MBM).

While the parties were never able to resolve their substantive differences

during the Chapter 7 bankruptcy case, the parties did come to a procedural

accord in terms of how the dispute with respect to the lien status of CIT was going

to be litigated.  In this regard, at the final hearing on CIT's motion for relief from

stay, which was held on April 25, 2006, each of CIT, the bankruptcy trustee, and

the Debtors agreed that the controversy surrounding CIT's lien status would be

adjudicated in state court.  The colloquy before Judge McCullough reflects this

agreement:

> Attorney Prostko
> for CIT:                This motion was originally filed back in September
> of 2005.  We have been continuing it for month
> after month.  This is a case where CIT made two
> loans to the Debtors, and there are two parcels of
> property that are side by side, two mortgages were
> recorded, and there are questions on the
> description because it appears that in each
> mortgage both parcels are included in the
> description at the time the mortgage documents
> were recorded.  At the time the bankruptcy case
> was filed there was a foreclosure action started
> and because of the legal description there was
> also, CIT was trying to reform the mortgage.  What
> we would like to do, because no one is paying on
> this mortgage, and the Debtors have contested the
> mortgage, we are asking for limited relief from stay
> to be able to go back to state court just for the
> purpose of trying to see if the state court is going
> to reform the mortgage, and allow the mortgage to
> only be on one parcel as opposed to both parcels.
> So that these two mortgages could be split up as
> they were originally intended to be.  I have

> prepared an order to do that, and I have circulated it to Debtors' counsel and to the Trustee, and I don't believe there are any objections.

Court:                      Do I hear any objections?

Attorney Malkin
for Debtors:                None from Debtors' counsel, your honor.

Trustee Wilson:             No, your honor.

Court:                      Do you want to submit your order? [Pause] So the parties have both reviewed this order and consent?

Attorney Malkin:            Yes your honor, we do.

Trustee Wilson:             Yes, your honor.

Attorney Prostko:           The order provides that in the event that the mortgage is reformed we would have to come back to the court for relief from stay to proceed with the foreclosure.

Court:                      Ok.  Good luck.

<u>See</u> (Audio Recording of Hearing 04/25/2006 @ 1:30 PM (2:44:43 - 2:46:51); Case No. 05-25453-MBM).[1]

In the instant Chapter 13 case, this Court held a hearing on CIT's motion to dismiss on September 9, 2008.  In due consideration of CIT's arguments, the

---

[1] The United States Bankruptcy Court for the Western District of Pennsylvania keeps an audio record of all court proceedings.  A copy of the audio file, and a transcript of the same, may be obtained by any litigant upon the submission of a written request and remittance of the requisite fee to the Clerk of the United States Bankruptcy Court.  The cost of obtaining an audio file is nominal at $26.00 pursuant to the Bankruptcy Miscellaneous Fee Schedule, 28 U.S.C. § 1930.  Guidance as to how a litigant may obtain a transcript, or copy of a recording, is also readily available in the "Frequently Asked Questions" section of the Court's website found at www.pawb.uscourts.gov.

opposition thereto filed by the debtors, and in light of the record made in the prior

Chapter 7 bankruptcy case before Judge McCullough as recited above, this Court

denied CIT's motion to dismiss.  In the course of denying CIT's motion to dismiss,

the Court orally set forth its findings and analysis on the record at the September

9, 2008 hearing, which are re-stated below for the convenience of the parties:

> I've been asked to address the Motion To Dismiss filed by CIT Consumer Group and the successor in interest is ... Vanderbilt Mortgage and Financing, Inc.  I have given this much thought and I have reviewed the briefs, the papers and I have also gone back and looked at the proceedings and have taken judicial notice of those proceedings that have taken place in front of Judge McCullough; and this is my ruling on the Motion To Dismiss.

> This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (B) (F) (K) and (O).  By this adversary proceeding the debtors are seeking to have this Court declare that the Defendants to be unsecured creditors because the collateral descriptions referenced in their recorded mortgages are allegedly defective.

> By the Motion To Dismiss the Defendants contend that the doctrine of *res judicata* bars the Plaintiffs from challenging the Defendants' secured status.  Specifically, the Defendants contend that the Plaintiffs received a bankruptcy discharge in a prior Chapter 7 case filed at Bankruptcy No. 05-25453MBM.  The. . . Defendants contend that they have filed secured claims in the prior bankruptcy proceedings against the Debtors, that no objection was lodged to the claims filed in the Chapter 7.  The Defendants then allege that their claims were therefore deemed allowed in those proceedings by operation of 11 U.S.C. § 502, and that the deemed allowance became final when the discharge order was entered in the prior Chapter 7 case, and that these facts now allegedly preclude the Debtors from challenging the lien status of the creditors in these Chapter 13 proceedings filed at Case No. 07-24252.

> I find, however, that under the unique facts and circumstances of this case that the doctrine of *res judicata* is inapplicable to these proceedings.  In order for *res judicata* to apply, the party invoking this doctrine must demonstrate that an actual judgment on the merits

was entered by a court of competent jurisdiction in a case involving the same parties or their privies, and involving the same cause of action.

The record in the prior Chapter 7 case, which I take judicial notice of pursuant to Federal Rule of Evidence 201, however, is that no cause of action was filed in the bankruptcy proceeding to litigate the claims now asserted by the Debtors, and no judgment on the merits was entered either. In fact, the record of the Chapter 7 bankruptcy case is that the Bankruptcy Trustee closed the Chapter 7 case, and as a result all non-exempt assets of the Debtor were returned to the Debtor to be used or disposed by the debtor outside of the Chapter 7 proceeding. See 11 U.S.C. § 554(c) of the Bankruptcy Code which states that assets of the estate not administered by the Trustee are deemed abandoned when a Chapter 7 liquidation is closed. See Bankruptcy No. 05-25453 at Docs. # 76, 77, and 78.

Thus it is difficult for this Court to find that actual litigation occurred with respect to the *bona fides* of the Defendants' lien position. In addition, these Defendant creditors moved for relief from the automatic stay in the Chapter 7 bankruptcy case. Again 05-25453 at Doc. # 25, 64. The Debtors opposed relief in those matters contending that the creditors cannot sustain their burden of proving their security interest because their mortgages were allegedly defective. Hearings were held on the motions and the objections on April 26, 2006 and June 13, 2006 respectively.[2] I have listened to

---

[2] Defendant Bank of New York also filed similar motions for relief from stay in the Chapter 7 proceedings, and a similar procedural accord was reached with this putative lien creditor in the Chapter 7 case. Specifically, the following agreement between the parties was set forth on the record at the June 13, 2006 hearing on the Bank of New York's motion for relief from stay:

| Attorney Prostko for Bank of New York: | I've had a chance to discuss this with counsel for the debtors, and we have agreed to the entry of an order that grants a modified relief from stay, for the purpose of allowing the Bank of New York, CIT Consumer Finance to proceed in state court, to resolve outstanding title issues, and issues of recording of the mortgage, and then come back to the bankruptcy court, once that has resolved to get final relief from stay. There are issues with this |

(continued...)

the audio recordings of those proceedings, and creditors were represented by counsel at those hearings. What is evident by those proceedings is that the Defendants agreed that the challenge to their secured status was to be litigated by the parties outside of the bankruptcy court, and as a result, orders were entered at Doc. #s 62 and 70, that's in the Chapter 7 case, which essentially memorialized that the parties were permitted to litigate the mortgage issues outside of the bankruptcy court.

The Chapter 7 bankruptcy case was then closed and now the creditors have come to this Court and in later proceedings and seek to assert, it seems to be kind of, quote "gotcha" close quotes.

I don't think that under these circumstances where the Defendants expressly agreed to carve out the mortgage issues for the parties to litigate in state court, and essentially lulled the Debtors to believe that that is where the issue would be resolved, that the creditors can now use the bankruptcy proceeding, that Chapter 7 bankruptcy proceeding, as *res judicata*. It is quite clear in the record that the Debtors relied on the agreements made in the bankruptcy court, and I conclude that the Defendants are therefore estopped from arguing that the bankruptcy proceedings are *res judicata*.

Lastly, I have reviewed the "deemed allowed" and "*res judicata*" cases cited by the Defendants in their briefs. I think that the issue is an interesting one, but I think that some of the cases cited by the

---

| | |
|---|---|
| [2](...continued) | mortgage and how it was recorded, and the split of the Debtor's property. There are several mortgages on this property. There are a couple of different properties, so this still needs to be resolved in state court. |
| Court: | Ok. |
| Attorney Prostko: | If I can hand this up? |
| Court: | Sure. Are you agreeable with this Miss Malkin? |
| Attorney Malkin for Debtors: | Yes, I do, Your Honor. |

See (Audio recording of Hearing Held 6/13/2006 @ 1:30 PM (2:49:25 - 2:50:35); Case No. 05-25453-MBM).

Defendants can be distinguished here.  Specifically, most of the cases cited by the Defendants dealt with some sort of order allowing the claim at issue whether by consent or by default.  We don't have an order to that effect in the Chapter 7 case.  In addition I find the case of <u>County Fuel v. Equitable Bank</u> to be persuasive.  That case is found at 832 F.2d 290 (4th Cir. 1987) which held that the failure to object to a claim gives rise to no *res judicata* effect.  I find this case to be persuasive because during the course of many bankruptcy cases, Debtors may very well have no need to object to claims.

The Calabria case is one instance where the parties agreed that the *bona fides* of the lien of the creditors will be decided outside of the bankruptcy court.  This was a case where the trustee determined that there was no meaningful assets to distribute, the Debtor [sic] was to receive a discharge, and the abandoned assets were reverted to the Debtor outside of the bankruptcy process.  Why would the Debtors object to claims in that instance in the bankruptcy court?  It just wouldn't make any sense.  And so for these reasons I am going to enter an order which denies the motion to dismiss.

I will note that the record in these proceedings has no mention as to exactly what transpired in state court after the relief from stay orders were entered in the bankruptcy court.  Nothing in my ruling today should be deemed or construed to be a finding by this Court, either positively or negatively, that the state court proceedings give rise to a claim of *res judicata* or collateral estoppel in favor of either the Plaintiffs or Defendants.  Those matters are just not of record, and therefore I make no determination in that regard.  For those reasons I am going to deny the motion to dismiss filed by Defendant CIT Consumer Group.

<u>See</u> (Audio Recording of Hearing  9/9/2008 @ 1:30 p.m (1:45:08-1:52:39); Adv. No. 08-02029-JAD).

The Court's order denying the motion to dismiss was entered on the docket on September 11, 2008.  On September 23, 2008, twelve (12) days after the entry on the docket of the order denying the motion to dismiss,[3] CIT filed a notice of

---

[3]  Fed.R.Bankr.P. 8002(a) states that notice of an appeal must be filed with the Clerk within ten (10) days of the date of the entry of the judgment.

appeal along with a motion for leave to appeal.  On September 25, 2008, CIT also

filed a motion for stay pending appeal, which the debtors opposed.

An expedited hearing was held on October 1, 2008 with respect to the

motion for stay pending appeal.  The parties then agreed to multiple continuances

to pursue a possible settlement, and hearings were duly scheduled and held on

October 22, 2008, December 16, 2008 and March 18, 2009, respectively.[4]  No

settlement was achieved, and this Court held a substantive hearing on the motion

for stay pending appeal on July 1, 2009.  This Memorandum Opinion is the result

of these proceedings.[5]

### III.  <u>Analysis</u>

The Court must consider four factors when ruling on the motion for stay

pending an appeal.  Those factors are: (1) whether the movant is likely to succeed

on the merits of the appeal; (2) whether the movant will suffer irreparable injury

if a stay is not granted; (3) whether a stay would substantially harm other parties

in the litigation; and (4) whether a stay is in the public interest.  <u>See</u> <u>In re</u>

<u>Countrywide Home Loans, Inc.</u>, 387 B.R. 467, 471 (Bankr. W.D. Pa. 2008)(citing

---

[4]  At these hearings, the parties agreed that the Notice of Appeal and Motion for Leave
to Appeal Order should be held in abeyance pending settlement discussions, and therefore
pursuant to the parties' request those items were not transmitted to the District Court.  <u>See</u>
Fed. R. Bankr. P. 8003.  No answer to the Motion for Leave to Appeal Order has been filed by
the Debtors to date (even though they did file a Motion to Quash).  By separate order, the
Debtors are instructed to file an answer to the merits of the Motion for Leave to Appeal Order.
When such answer is filed, the clerk shall transmit to the District Court: (a) the Notice of
Appeal, (b) the Motion for Leave to Appeal Order, (c) the answer and (d) the Motion to Quash.
<u>Id</u>.

[5]  The Court notes that it remains to be seen whether or not leave to appeal the order
denying dismissal will be granted.

cases, including <u>Republic of Phillippines v. Westinghouse Elec. Corp.</u>, 949 F.2d
653, 658 (3d Cir. 1991)).

The Court notes that the failure to satisfy any one of the four factors set
forth above might not necessarily be fatal to a motion for stay pending appeal.
Rather, to determine whether a stay pending appeal is warranted, the Court is to
balance each of the factors at issue and examine individualized considerations
relevant to the case. <u>Id</u>.

In this case before the Court, the balance of factors favors a denial of the
motion for stay pending appeal.

## A.  Likelihood of Success on the Merits

Several approaches have been utilized by various courts when analyzing
whether a movant seeking a stay has a likelihood of succeeding on appeal.  For
example, some courts focus on the strength of the case the movant will present
on appeal.  <u>See Id</u>. (citing <u>In re Polaroid Corp.</u>, 2004 WL 253477 *1 (D. Del. 2004).
As my colleague Judge Thomas Agresti noted: "Taking this approach does put a
court in the somewhat awkward, though not impossible, position of trying to
objectively assess the likelihood that its ruling will be upheld on appeal." <u>Id</u>.  To
avoid the difficulties imposed by this form of self-assessment, other courts have
focused "on whether the movant seeks to raise issues on appeal that are
substantial, serious, and doubtful so as to make them fair ground for litigation."
<u>Id</u>. (citing <u>In re Lickman</u>, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003).  In addition,
a few other courts have adopted a "sliding scale" measure under which a court will

examine the strength of the case on appeal, relative to the hardships to be suffered if a stay is not granted. Id. at 472 (citing In re Cujas, 376 B.R. 480, 486 (Bankr. E.D. Pa. 2007).   Under any of these approaches, CIT has not shown a likelihood of success.

CIT contends in its appeal that the Debtors' challenge to CIT's lien status is barred because the allowance of its proof of claim in the Debtors' prior Chapter 7 case operates as a final judgment for *res judicata* purposes.  CIT's reliance on *res judicata* is misplaced.

The main purpose behind the doctrine of *res judicata* is to prevent the splitting of claims and to protect a defendant from being harassed by repetitive actions based on the same claim. In the Matter of Super Van, Inc., 92 F.3d 366, 371 (5th Cir. 1996)(citing Clements v. Airport Authority of Washoe County, 69 F.3d 321, 328 (9th Cir. 1995)(quoting RESTATEMENT (SECOND) JUDGMENTS § 26 cmt. a)). However, there are exceptions to the general application of the doctrine of *res judicata.*

For instance, the Third Circuit Court of Appeals recognizes that "a party will not be precluded from raising a claim by a prior adjudication if the party did not have the opportunity to fully and fairly litigate the claim." See Corestates Bank., N.A. v. Huls America, Inc., 176 F.3d 187, 197 (3d Cir. 1999)(citing RESTATEMENT (SECOND) OF JUDGMENTS    § 26(1)(c).   In addition, the RESTATEMENT (SECOND) JUDGMENTS recognizes

that a second action may be brought by a plaintiff on the same cause

of action if the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein. . . . A contrary rule, one imposing *res judicata* despite a defendant's agreement or acquiescence in the splitting of the claim, would encourage litigants to engage in dishonest (or at least less than forthright) behavior to gain tactical advantage.

Id. (quotations omitted)(quoting RESTATEMENT (SECOND) JUDGMENTS § 26(1)(a) and citing Clements, 69 F.3d at 328, Diversified Foods, Inc. v. First Nat'l Bank of Boston, 985 F.2d 27, 31 (1st Cir.), *cert. denied*, 509 U.S. 907 (1993), Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir.), *cert. denied*, 498 U.S. 900 (1990), and Torres v. Rebarchak, 814 F.2d 1219, 1225 n. 4 (7th Cir. 1987)); see also Power Travel Int'l, Inc. v. Americal Airlines, Inc., No. 1:02-CV-7434-RWS, 2004 WL 5299598 at *7 (S.D.N.Y., Nov. 5, 2004).

The preceding exceptions are applicable to this adversary proceeding. The Court reaches this conclusion because the undisputed record of the prior Chapter 7 case indicates that the parties agreed to carve the lien dispute out of the Chapter 7 bankruptcy process. The April 25, 2006 colloquy before Judge McCullough admits as much and provides as follows:

Attorney Prostko
for CIT:        This motion was originally filed back in September of 2005. We have been continuing it for month after month. This is a case where CIT made two loans to the debtors, and there are two parcels of property that are side by side, two mortgages were recorded, and there are questions on the description because it appears that in each mortgage both parcels are included in the description at the time the mortgage documents were recorded. At the time the bankruptcy case was filed there was a foreclosure action started

and because of the legal description there was also, CIT was trying to reform the mortgage. What we would like to do, because no one is paying on this mortgage, and the Debtors have contested the mortgage, we are asking for limited relief from stay to be able to go back to state court just for the purpose of trying to see if the state court will reform the mortgage, and allow the mortgage to only be on one parcel as opposed to both parcels, so that these two mortgages, they could be split up as they were originally intended to be. I have prepared an order to do that, and I have circulated it to Debtors' counsel and to the Trustee, and I don't believe there are any objections.

Court:                     Do I hear any objections?

Attorney Malkin
for Debtors:               None from Debtors' counsel, your honor.

Trustee Wilson:            No, your honor.

Court:                     Do you want to submit your order? [Pause] So the parties have both reviewed this order and consent.

Attorney Malkin:          Yes your honor, we do.

Trustee Wilson:            Yes, your honor.

Attorney Prostko:         The order provides that in the event that the mortgage is reformed we would have to come back to the court for relief from stay to proceed with the foreclosure.

Court:                     Ok.  Good luck.

See (Audio Recording of Hearing  04/25/2006 @ 1:30 PM (2:44:46-2:46:50); Case

No. 05-25453-MBM).

    With the parties having agreed to litigate the lien issues outside of the

Chapter 7 case, this Court can hardly conclude that the Debtors had a full and

fair opportunity to challenge the liens of CIT in the prior bankruptcy case. Indeed, the record reflects that the Debtors had no such opportunity because the parties agreed to litigate the issues elsewhere. Under these circumstances, both the cases cited by CIT[6] and the doctrine of *res judicata* are simply inapplicable. CIT's appeal therefore fails to raise a "substantial" or "serious" doubt as to the merits of this Court's September 9, 2008 decision, and CIT has not demonstrated a strong likelihood of success on appeal.

## B. Irreparable Injury to CIT

The irreparable injury alleged by CIT in its Motion for Stay Pending Appeal consists of the following: "a risk of inconsistent results and wasted cost and effort." The Court notes that CIT has not articulated what it means by "inconsistent results." In any event, the Court's ruling on this matter is law of the case.

At the hearing on the Motion for Stay Pending Appeal, CIT was asked about its claim of irreparable injury and the only injury it could cite is the cost of further litigation. Such an injury is not a sufficient basis to impose a stay because "[i]t has long been recognized that mere litigation expense, even if substantial and unrecoupable, does not constitute irreparable injury." In re Countrywide Home Loans, Inc., 387 B.R. at 474 (citing Renegotiation Bd. v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974)).

---

[6]  See e.g., Siegel v. Federal Home Loan Mtg. Corp., 143 F.3d 525 (9th Cir. 1998); EDP Medical Computer Systems, Inc. v. United States, 480 F.3d 621 (2d Cir. 2007); Wecshler v. Hunt Health Systems, Ltd., No. 94 Civ. 8294, 1999 WL 397751 (S.D.N.Y. June 16, 1999).

**C. Harm to Other Parties in the Litigation**

CIT argues that neither the Debtors nor any other party to this adversary proceeding will suffer substantial harm if a stay is granted. CIT's observation is probably accurate. However, the Court does note that the outcome of the litigation does impact the terms and conditions of the Debtors' Chapter 13 plan. As a result, confirmation of the same has been delayed all while this litigation is pending.

**D. The Public Interest**

CIT argues that granting of the stay serves the public interest. Specifically, CIT alleges that the Debtors have done nothing but "game" the system by filing a previously filing a Chapter 7 case and obtaining a Chapter 7 discharge without challenging CIT's lien position in the prior bankruptcy. The Court does not find this argument to be persuasive.

The Court is troubled by the aggressive tone of CIT's pleadings , and by the fact that CIT's rendition of the events which transpired is incomplete.

Repeatedly, CIT has alleged in its papers that the Debtors' prior bankruptcy case was prosecuted in "bad faith" or that the Debtors have improperly "gamed the system." See e.g. *Defendant/Appellant's Memorandum of Law in Support of Motion for Stay Pending Appeal* at pp. 1 and 7; *Memorandum of Law in Support of Defendant, CIT Consumer Group's, Motion to Dismiss Adversary Complaint* at pp. 3 and 10. CIT has also alleged that the Debtors' prosecution of its bankruptcies is "dangerously close to a fraud upon the Court and constitutes bad faith as a

matter of law." *Memorandum of Law in Support of Defendant, CIT Consumer Group's, Motion to Dismiss Adversary Complaint* at p. 3, n. 1.  By these allegations, CIT seems to imply that the Debtors have in some fashion abused the bankruptcy process and hid its lawsuit from creditors.  But that is not what happened in the Debtors' Chapter 7 bankruptcy case.

While it is true that the Debtors' schedules in the Chapter 7 case do not list CIT's claims as disputed, the schedules filed by the Debtors do acknowledge and disclose the fact that CIT's mortgage is allegedly defective.   Specifically, the Debtors disclosed the discrepancy in the mortgage at or about the time of filing their Chapter 7 bankruptcy.  In Schedule A, Real Property, the Debtors note that there is a mistake on their mortgage for their residence as well as for the one acre adjoining property.  In describing the one acre adjoining property, the Debtors state the property was incorrectly mortgaged and claim that title abstracts records had been provided to the Chapter 7 Trustee.  (See Dkt. #1; Case No. 05-25453-MBM).

The fact of the matter is that the Debtors' cause of action against CIT was fully disclosed to both the Chapter 7 trustee (who is a fiduciary for creditors) and the Court before the Chapter 7 estate was closed.  At each of the hearings held by Judge McCullough on CIT's motion for relief from stay, various statements were made by the parties regarding the Debtors' dispute of the lien status of CIT.  For instance, at the October 11, 2005 hearing on CIT's motion for relief from stay, the following colloquy took place:

00003443.WPD                                           -17-

Attorney Prostko,
for CIT:

CIT Group has a mortgage on a piece of the Debtors' property, I guess they own several pieces of real estate. But this is property at 93 Meadow Brook Road in Washington County. A response has been filed by the Debtors, and a response by the Trustee. I don't believe that the meeting of creditors has been held yet in this case, and it appears that the Debtors believe that there may not be adequate descriptions attached and recorded with the mortgages. The Trustee, I believe, wants a chance to review those mortgages, and conduct a meeting of creditors, so we are asking today that the motion be continued for...how long?

Attorney Bohm,
for Trustee Wilson:

We were hoping 60 to 90 days, that was going to be my request.

<u>See</u> (Audio Recording for Hearing 10/11/2005 @ 1:30 PM (2:22:58-2:23:43); Case

No. 05-25453-MBM). The motion for relief from stay was then continued to

February 13, 2005, and this hearing resulted in the discussion set forth below:

Attorney Prostko
for CIT:

This is CIT's motion for relief from stay on a piece of real estate at 93 Meadow Brook Drive in Washington County. We were here once before, and asked for a continuance because it appears that the Debtors own two parcels of real estate, and those two parcels are encumbered by a couple of different mortgages. And the schedules aren't clear as to the addresses of the property, and the meeting of creditors had not been held yet at the last hearing. The Debtors did not appear for the meeting of creditors, and its been rescheduled till the Thursday, I think, of this week. I think the Trustee and I would like some additional time to

be able to have her conduct the meeting of creditors, find out who is living on what parcels of property. Apparently the Debtors' parents live on one of these parcels, and the Debtors live on one of the parcels. And I think that we need a meeting of creditors to try to be able to sort this out to see if we are able to have relief from stay, at least as to Debtors' residence.

**** 

Court:                          Mr. Brzustowicz, are they [Calabrias] going to appear?

Attorney Brzustowicz
for Debtors:                 Yes your honor.

Court:                          Ok. So we will continue this for how long?

Attorney Prostko:       30 days.

See (Audio Recording of Hearing 12/13/2005 @ 1:30 PM (2:44:32-2:46:15); Case No. 05-25453-MBM).

At the subsequent hearing held on January 17, 2006, the issue of CIT's lien status still remained unresolved, as reflected below:

Attorney Prostko
for CIT:                       This is CITs Motion, your honor. And in this case, CIT made two loans to the Debtor, apparently both on the same day. Recorded two mortgages on different properties, and there is some confusion now about which loan is on which property, and which legal description covers which property. In addition, one of these properties may have value for the estate, so the Chapter 7 Trustee is interested in looking at one of the parcels to see if it can be sold for the benefit of creditors. I think we need a little bit more time to try and sort out the legal descriptions of the two mortgages. We

> think that 60 days should be enough time to be
> able to do that.

Trustee Wilson:   That is correct your honor.

<u>See</u> (Audio Recording of Hearing 01/17/2006 @ 1:30 PM (3:12:00-3:13:00); Case

No. 05-25453-MBM).

The motion for relief from stay in the prior Chapter 7 case was therefore

adjourned to March 21, 2006.   During the March 21st hearing the following

statements were made to the Court which reflect the fact that the bankruptcy

trustee was fully advised of the Debtors' claims:

> Attorney Prostko
> for CIT:   A question has arisen in the case regarding the
> documents that are actually filed with the recorder
> of deeds in Washington County, and the
> descriptions on the mortgages filed by CIT.  So,
> since the last hearing, we have provided to the
> Trustee, I think, copies of the actual recorded
> documents, the mortgage, along with copies of the
> note, and some addendums to the mortgages that
> were recorded.   But the Trustee needs some
> additional time to review those mortgages, and
> look at, I guess, the recordings in Washington
> County.

> Trustee Wilson:   Your honor, that is correct.   I received the
> documentation today.  I have forwarded the same
> to Debtors' attorney.   We are requesting an
> additional 30 days.

<u>See</u> (Audio Recording of Hearing 03/21/2006 @ 1:30 PM (2:35:25-2:36:00); Case

No. 05-25453-MBM).

In addition, the language of the Order dated April 25, 2006 granting relief

from stay further makes clear that the parties were aware of the Debtors' claims.

The Order provided that relief from stay was granted "for the sole and limited purpose of allowing CIT Group/Consumer Finance, Inc. to proceed with a State Court action to resolve any outstanding title issue(s) with regard to the recorded mortgage on said property, and the legal description attached, or which should have been attached thereto." (See Dkt. #62; Case No. 05-25453-MBM).

As can be seen by the statements highlighted above, nothing nefarious transpired in the Chapter 7 case because the Debtors' challenge to the lien position of CIT was fully disclosed to the bankruptcy trustee and the Court. Under these circumstances, the Debtors can hardly be deemed to have proceeded in bad faith in their bankruptcy cases. See e.g. In re Logan Medical Foundation, Inc., 346 B.R. 184, 189 (Bankr. S.D. W. Va. 2006)(debtor cannot be deemed to have gained an unfair advantage by failure to schedule lawsuit when the debtor disclosed its litigation claims before creditors had opportunity to vote on plan of reorganization); Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 898-899 (6th Cir. 2004)(plaintiffs had not engaged in bad faith conduct when, despite the failure to schedule litigation claims, the plaintiffs made the court and the bankruptcy trustee aware of the civil action before the bankruptcy was closed); see also In re Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414, 419-420 (3d Cir. 1988)(failure of plaintiff to mention potential claim "either within the confines of its disclosure statement or at any stage of the bankruptcy court's resolution precludes . . . later independent action.").

CIT nonetheless takes issue with this Court's judicial notice of the complete record made in the Chapter 7 proceedings, including the admissions made by the parties at the hearings on CIT's motion for relief from stay. Why would CIT oppose the Court's review of the complete record? The Court never really received an answer to this question.[7]

Many courts have "held that federal courts have the authority to take judicial notice of proceedings in other courts, either within or without the federal system, provided those proceedings are directly related to the matters at issue." Allegheny, Inc. v. Basic Packaging Systems, Inc.  (In re Allegheny, Inc.), 86 B.R. 466, 469 (Bankr. W.D. Pa. 1988)(citing cases). As such, taking judicial notice of the CIT relief from stay proceedings before Bankruptcy Judge McCullough appears to be proper. This Court's conclusion in this regard is particularly acute because CIT's motion to dismiss directly put at issue the agreements and admissions made by CIT in the Chapter 7 proceeding, and the Debtors' civil complaint itself specifically mentions the CIT relief from stay proceedings. Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates, Ltd.), 61 F.3d 197, 205-206 (3d Cir. 1995).[8]

---

[7] CIT has not disputed that an agreement to carve-out the lien dispute was made in the Chapter 7 proceeding. CIT's objection appears to be centered on the fact that no transcript exists for the Chapter 7 relief from stay proceedings. This objection rings hollow because CIT has never requested a transcript of the hearings. In addition, an audio tape of the proceedings has always been available to CIT at a nominal cost.

[8] While CIT objects to the Court taking judicial notice of what transpired in this Court, CIT also complains of the fact that this Court has ignored CIT's judgment in mortgage foreclosure in state court. See *Defendant CIT Consumer Group's Memorandum of Law in*

(continued...)

CIT also asserts that Debtors have filed this Chapter 13 for the purpose of challenging the mortgages despite a lack of significant new debt since their Chapter 7 case. <u>See</u> *Defendant/Appellant's Memorandum of Law in Support of Motion for Stay Pending Appeal* at p. 2. A review of the schedules reveals, however, that Debtors have incurred unsecured debt in the amount of $10,060.02. <u>See</u> Dkt. #5, (Schedule F); Case No. 07-24252JAD.

Finally, the Court notes that further delay to this Chapter 13 proceeding is not in the public interest. The lien issues concerning CIT and the other creditors have been permeating for years, without final resolution. Staying these matters pending an appeal will only cause further delays. Therefore, it appears that denying the request for stay is actually in the public interest. <u>See</u> <u>In re Metiom, Inc.</u>, 318 B.R. 263, 272 (S.D.N.Y. 2004)(the public interest is served by expedient bankruptcy administration).

## IV. <u>Conclusion</u>

---

[8](...continued)
*Support of Motion for Leave to Appeal Order Entered September 9, 2009* at p. 3, n. 2. What is troubling to the Court in this regard is that CIT never mentioned its judgment in foreclosure in connection with its motion to dismiss. The Court even stated in its ruling on the motion to dismiss as follows:

> I will note that the record in these proceedings has no mention as to exactly what transpired in state court after the relief from stay orders were entered in the bankruptcy court. Nothing in my ruling today should be deemed or construed to be a finding by this Court, either positively or negatively, that the state court proceedings give rise to a claim of *res judicata* or collateral estoppel in favor of either the Plaintiffs or Defendants. Those matters are just not of record, and therefore I make no determination in that regard.

<u>See</u> (Audio Recording of Hearing 9/9/2008 @ 1:30 p.m.(1:51:59-1:52:28); Adv. No. 08-02029-JAD). The Court first learned about the possible judgment in mortgage foreclosure in favor of CIT when it read CIT's memorandum of law in support of its request for leave to appeal.

00003443.WPD                                                    -23-

As set forth in the discussion and analysis set forth above, the great weight of the factors in this case support the denial of CIT's Motion for Stay Pending Appeal, even though no party will be irreparably harmed if a stay were imposed. The Court reaches this conclusion because (a) CIT's appeal does not have a strong likelihood for success on the merits, (b) CIT suffers no irreparable harm if the litigation was to proceed without a stay, and (c) the public interest is served by bringing this adversary proceeding to ultimate conclusion.

An appropriate Order will be issued.

Dated: July 15, 2009          /s/ Jeffery A. Deller
                              Jeffery A. Deller
                              United States Bankruptcy Judge

cc:    Jonathan J. Bart, Esq., Counsel to CIT Consumer Group
       John Brzustowicz, Esq., Counsel to Debtors
       Gary Gaertner, Esq., Counsel to Bank of New York
       Ronda Winnecour, Esq., Chapter 13 Trustee

00003443.WPD                    -24-

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| _____ ) | **Case No. 07-24252-JAD** |
| **IN RE:** ) | |
| ) | **Chapter 13** |
| **GLENN M. CALABRIA and** ) | |
| **TOMMI M. CALABRIA,** ) | |
| ) | |
| **Debtors.** ) | |
| _____X | |
| ) | |
| **GLENN M. CALABRIA and** ) | **Adv. No. 08-02029JAD** |
| **TOMMI M. CALABRIA,** ) | |
| ) | **Doc. #50** |
| **Plaintiffs,** ) | |
| ) | |
| - vs - ) | |
| **CIT CONSUMER GROUP; BANK** ) | |
| **OF NEW YORK, and CITI FINANCIAL,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____X | |

**<u>ORDER</u>**

AND NOW, this **15th** day of **July**, **2009**, upon consideration of Defendant

CIT Consumer Group's Motion for Stay Pending Appeal and the Debtors'

opposition thereto, and for the reasons stated in the Memorandum Opinion issued

contemporaneously herewith, the Court hereby ORDERS, ADJUDGES and

DECREES that the Motion for Stay Pending Appeal is DENIED.


Dated: July15, 2009          /s/ Jeffery A. Deller_____
                                          Jeffery A. Deller
                                          United States Bankruptcy Judge

cc:     Jonathan J. Bart, Esq., Counsel to CIT Consumer Group
        John Brzustowicz, Esq., Counsel to Debtors
        Gary Gaertner, Esq., Counsel to Bank of New York
        Ronda Winnecour, Esq., Chapter 13 Trustee